CHICAGO RAILWAY EQUIPMENT CO. v. INTERCHANGEABLE BRAKE-BEAM CO.

(Circuit Court, E. D. Missouri, E. D. January 24, 1900.)

No. 4,048.

PATENTS—INFRINGEMENT—CAR BRAKES.

The Robischung patent, No. 486,218, for improvements in brakes for railway cars, claim 5, covering a locking device designed to prevent any alteration of the camber of the brake beam, construed, and *held* valid, but not infringed.

This was a suit in equity for infringement of a patent. On final hearing.

Paul Bakewell and F. W. Ritter, Jr., for complainant.
Noble & Shields and Geo. S. Payson, for defendant.

ADAMS, District Judge. This is an action for the infringement of the fifth claim of letters patent of the United States No. 486,218, granted to Henry B. Robischung, November 15, 1892. This claim is as follows:

"In a trussed cambered brake beam, the combination, with a cambered compression member, a tension member, a brake head, and a nut for maintaining the camber, of an interposed locking device, for preventing any alteration in the camber of the beam, substantially as and for the purposes specified."

The patentee, in his specification, states the object of his invention to be "to prevent any tampering with the camber of the beam after it has been finally adjusted, which unauthorized and injurious tampering with the camber of the beam frequently takes place in attempts to take up or obtain slack in hanging the beam; and this object I accomplished by interposing between the tension member and head a locking device, which must be removed or destroyed before the camber of the beam can be changed." The device of this claim is very simple. It consists of interposing, between the brake head and the nut which controls the tension rod, a thin disk or locking plate, provided with a lip to be turned up after the nut is screwed into position, to prevent, under the penalty of immediate detection, any unauthorized interference with the nut, so as to affect the camber of the beam. The history of this invention shows that, after the camber or degree of resilient force in the compression member had been fixed and the beam tested, its integrity and effectiveness required that the same should not be subject to any unauthorized interference or intermeddling. It was found that employés of railroads, in adjusting the brake lever to the requirements of the air-brake system, and for other purposes, were in the habit, occasionally, of making their work easy by loosening or tightening up the nuts of the tension rod, thus diminishing or increasing the camber of the beam, in order to make the requisite variation in the position of the brake lever. This practice proved highly detrimental to the effectiveness of the beam, and it became a matter of serious concern to the manufacturers to know whether the ineffectiveness of the beam, in given cases, was their fault or the fault of the railroad operatives. The purpose of the inventor of the device of claim 5 was to discover something which could serve as a detector, to afford the manufacturers an opportunity of ascertaining whether their beams had been tampered with after delivery, and, incidentally, by reason of the certainty of detection, to prevent any such tampering. The lip, in order to serve the purpose of the designer, was made of frangible material, so that, when once bent over, it would readily break, and not bend back to the old position, and thus prevent the detection of a trespasser. This particular device is found in a combination of elements consisting of a cambered compression member, a tension member, a brake head, and a nut for

maintaining camber.   These elements, as seen in the case of National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co. (just decided) 99 Fed. 758, are all old, and it is claimed by defendant's counsel that the additional element of the locking device is also old. They say it is nothing but the old-time nut lock, which has been employed in mechanical construction for a quarter of a century or more. A "nut lock," as such, is defined to be "a device for fastening a bolt nut in place, and preventing its becoming loose by the jarring or tremulous motion of machinery."   It seems to me that the device of the claim in question is intended to and does perform a function entirely different from that of a nut lock.   Its popular name, "detector," well and tersely describes this function.   It produces a new and beneficial result, and does so in a different way, and by means quite unlike those shown in the prior art.   The ordinary nut lock serves its purpose best when made strong and durable.   The device of claim 5 serves its purpose best when made brittle and readily destructible. It is, in my opinion, a meritorious invention, well adapted to meet the want created by the necessities attending its use.   Does the defendant infringe?   Counsel say it does not, because there is a groove on the end of the brake head of the complainant's device, and a raised rib on the disk of the locking device, intended to fit into the groove, to prevent rotation of the disk, which the defendant does not employ. While this groove and rib construction appears in complainant's device, it is not called for by the claims of the patent, and is referred to in the specification as only a preferential construction.   In my opinion, this groove and rib are not essential to the invention, and, as a result, the defendant's failure to employ them does not affect the issue of infringement.

Counsel say that defendant does not infringe because its construction is an old nut lock, and nothing more, and is employed, not as a detector, but merely as a nut lock, to prevent the loosening of the nut by the jolting incident to service; and, to substantiate this, they call attention to the proof showing that there are two lips on the defendant's lock, instead of one, as on the complainant's, and that they are made, not of brittle or frangible material, but of pliable material, such as may be readily turned down, and afterwards bent back, without breaking or subsequently disclosing the fact that they had been disturbed.   I believe the evidence clearly shows this to be the defendant's construction.   The description of the patent, to which reference is made, in claim 5 states: "This object [namely, preventing tampering with the camber] I accomplished by interposing between the tension member and head a locking device, which must be removed or destroyed before the camber of the beam can be changed."   It is such a destruction of the lip of the locking device as prevents its returning to its original position that alone serves the purpose of detecting interference with it.   The testimony, as well as the specifications, all show that this sure and certain destructibility or breaking of the lip of the device by the act of bending it down constitutes the effective detective feature of the claim;   in other words, if the device is made of such material as will permit its being bent back into position, so as not to disclose the fact of disturb-

ance, it affords within itself opportunity for defeating the very purpose of the invention.

It is said by complainant's counsel that defendant has no occasion to use a nut lock merely, for the reason that the camber or resiliency of the compression member does away with the necessity of such a nut lock, in this: that the constant pressure of the nut against the threads on the end of the tension rod performs all the useful functions of the nut lock. Without doubt, this is theoretically true; but I cannot conclude from this fact, as I am asked to do, that the defendant's device is necessarily intended to perform the function of a detector, when it lacks the particular feature of frangibility, which alone fits it for that service. In addition to this, it is not an unreasonable thing for any one to provide against the possibility of ineffectiveness of theoretical action by the safeguard of a simple, practical, and well-understood device. Because, therefore, it appears from the evidence that the defendant does not make its device of any frangible or easily broken material, but rather of pliable material, such as may be readily turned down and bent back without breaking, I conclude that the defendant does not infringe the device of claim 5 of this patent. The bill must be dismissed.